Before STATE INDUSTRIAL BOARD, Respondent.

In the Matter of the Claim of MARIA ABATTE CALDERERA and Others, Respondents, for Compensation under the Workmen's Compensation Law, for the Death of SALVATORE CALDERERA, *v.* P. NATHAN & COMPANY, Employer, and ZURICH GENERAL ACCIDENT AND LIABILITY INSURANCE CO., LTD., Insurance Carrier, Appellants.

Third Department, March 8, 1922.

**Workmen's Compensation Law — when mother and two daughters not dependent on son — "dependent" defined — sufficient evidence of death from blood poisoning resulting from injury caused by stepping on upholstery tack in course of employment — spirit of requirement of § 18 as to notice or knowledge of injury and death satisfied — employer not prejudiced.**

The dependency of a mother and two daughters on the earnings of a deceased son which were paid to the mother was not established where it was not shown that any of said earnings were ever applied toward the support of the mother and said daughters, and there was no evidence that the living expenses of the family exceeded the amount contributed by other members thereof.

"Dependent," as used in the statute, means one who looks to another for support or help and the award must be to each person for the support of that person.

*It seems,* that there was sufficient evidence to warrant a finding that the deceased, while working at his employer's plant, stepped on an upholstery tack causing a wound which became infected leading to general blood poisoning from which he died.

*It seems,* that the spirit of the requirement of section 18 of the Workmen's Compensation Law in respect to notice of injury and death to the employer, as it stood prior to the amendment by chapter 634 of the Laws of 1918, was satisfied and a conclusion that the employer was not prejudiced was justified, where it appeared that the employer made a report of the accident to the Commission within thirty days after it occurred wherein he said that the employee claimed to have stuck a nail into his foot and acknowledged the receipt of a letter from the father of the employee calling the employer's attention to the injury, as thus the employer had all the notice that would have been given of the injury and death within the thirty-day period and the Commission within such period received the report of the employer.

APPEAL by the defendants, P. Nathan & Company and another, from a decision and award of the State Industrial Commission, entered in the office of said Commission on the 29th day of March, 1921.

*Alfred W. Andrews* [*Charles B. Sullivan* of counsel], for the appellants.

*Charles D. Newton,* Attorney-General [*E. C. Aiken,* Deputy Attorney-General, of counsel], for the respondents.

HINMAN, J.:

Awards have been made to the mother and two dependent sisters of Salvatore Calderera, deceased, for his death which has

been found to have resulted from an accident arising out of and in the course of his employment as an apprentice in the upholstering of furniture which was the business of his employer. (See Workmen's Compensation Law, §§ 3, 2, group 16, as amd. by Laws of 1917, chap. 705; Id. § 10.)

There seems to be sufficient evidence of appropriate character to sustain the finding of the State Industrial Board that while working at the plant he stepped on an upholstery tack causing a wound which became infected leading to general blood poisoning from which he died. There is direct evidence to show that the deceased employee arrived at his place of work on the morning of August 19, 1920, walking without limping; that a fellow-employee saw him later that morning pull a tack out of the sole of his left shoe by the use of a screwdriver, the tack being about one-half inch long and the sole of the shoe about one-quarter of an inch thick; that thereafter another employee saw him limping about that day and the next day, which was Friday and the last working day of the week, and after which he did not return to work; that on Sunday, two days later, he complained to his father and mother that he had a pain in his foot and that he had injured himself and a doctor was sent for who saw him on Monday, the twenty-third; that the physician found a small punctured wound in his left foot at about the spot indicated by the fellow-employee who saw him pulling out the tack; that the physician found him in bed with a high fever and suffering from general blood poisoning which caused the foot to swell and a swelling of the left leg and also of the left arm, all of which continued to get much worse, resulting in his being sent to the hospital on August twenty-seventh, where he died on August twenty-ninth, the cause of his death being certified to be osteomyelitis of the humerus. The physician expressed the opinion that there was a causal relation between an original infection from the small punctured wound in the left foot and the osteomyelitis of which he died, the osteomyelitis being a diseased condition of the bone due to general septicemia.

From these facts it can readily be inferred that the employee did receive a wound in his foot from a tack and that such injury was received in the course of his employment; that he was infected therefrom and that he died as a result thereof. At least it cannot be said that there was no competent evidence from which the Industrial Board could not fairly find as it did.

There was a failure to file written notice of the injury and death in accordance with section 18 of the Workmen's Compensation Law. The State Industrial Board held that the written notice of injury or death was excusable because the employer had actual knowledge

of the injury and death and, therefore, was not prejudiced.  It is claimed by the appellants that there was no evidence given before the Industrial Board that failure to give notice did not prejudice the employer in the absence of which evidence the failure to give notice cannot be excused, citing *Matter of Bloomfield* v. *November* (223 N. Y. 265); *Matter of Hynes* v. *Pullman Co.* (Id. 342), and other authorities, holding that the claimant has the burden of showing that the employer and insurance carrier were not prejudiced.

These cases arose prior to the amendment of section 18 of the Workmen's Compensation Law by chapter 634 of the Laws of 1918. The present provision with reference to the authority of the Commission to excuse the failure to give notice, the italics representing the amendment of 1918, is as follows:  " The failure to give notice of injury or notice of death unless excused by the Commission either on the ground that notice for some sufficient reason could not have been given, *or on the ground that the employer, or his or its agents in charge of the business in the place where the accident occurred or having immediate supervision of the employee to whom the accident happened, had knowledge of the accident,* or on the ground that the employer has not been prejudiced thereby, shall be a bar to any claim under this chapter,  *  *  *.''

It is not clear whether the Legislature intended that the " knowledge of the accident " in the possession of the employer or its agents in charge of the business in the place where the accident happened, or having immediate supervision of the employee to whom the accident happened, speaks as of the time of the accident or whether it applies to knowledge of the same within the thirty-day period within which the notice of injury must be given to the employer and to the Commission.  It does not seem to be necessary to decide that question here.  The fact in this case is that the accident happened upon the 19th day of August, 1920.  The employer made a report on the 9th day of September, 1920, which was within thirty days.  In this report the employer says that the injured employee claims to have stuck a nail into his left foot and acknowledges the receipt of the letter from the father of the deceased, one of the claimants herein, dated September 8, 1920, calling the employer's attention to the injury.  Thus the employer had all the notice that would have been given of the accident and death within the thirty-day period and the Commission within the thirty-day period received the report of the employer.  The spirit of the law was satisfied and these facts alone would justify the Commission in reaching the conclusion that the employer was not prejudiced.

The serious question in this case is that of dependency.  The

deceased was survived by a father, a mother, a married sister, a married brother, another brother aged twenty-eight, single and living at home, another brother aged twenty-four, single and living at home, another sister aged eighteen who lived at home, and two young sisters aged six and twelve respectively, who lived at home. The father was fifty-six years old, but worked as a longshoreman for at least two different firms. The evidence showed that he earned on the average twenty dollars a week. He claimed that he worked only about one-half the time and that he was affected with rheumatism and hernia, but one of his employers testified that he was a steady worker and the books of one of his employers alone showed that he had received from it during the year 1920 the sum of seven hundred and twenty-four dollars and thirty cents, and that in the months of July and August of that year he had received two hundred and thirty-two dollars and forty cents. The mother was forty-seven years of age, as to whom the father testifies: " The mother is sick also and is not well to help out the family." No other testimony is given to show the nature of her illness or the extent to which she was unable to help out the family, or a source of expense by reason of her illness. The two married children did not live at home. The son of twenty-eight years lived at home and worked in a furniture factory where he earned about twenty-five dollars per week. There was nothing to show that his employment was not continuous except for the period of a strike not long before the hearing in November, 1920. He paid his mother about five or six dollars per week. The son of twenty-four years of age lived home and was a longshoreman making twenty-five or thirty dollars per week when there was employment. He paid his mother eight or ten dollars per week when he was working. The oldest daughter, eighteen years of age, living at home, was a worker who earned ten or twelve dollars a week but who at the time of the hearing had not been working for about two months because there was no work just then. Salvatore, the deceased, a boy of sixteen, had been earning from twelve to fifteen dollars a week during the summer shining shoes and had been working for P. Nathan & Co. as an apprentice in his furniture establishment for about two weeks, earning ten dollars a week. This money he had been turning over completely to his mother. The father testifies: " Well, the boy was beginning to work and he had to bring in all the money, because he needed it for his own use and to dress him and everything else, while the others dressed themselves; the mother didn't do any buying for their clothes at all," and again he testifies: " Well, the mother was buying the clothes for Salvatore out of the ten dollars. Q. Out of Salvatore's

money, was she clothing and feeding him on ten dollars?  A. Yes, sir — everything; carfare to go to work and come from work out of that." There is no testimony tending to show that his money was ever used by the mother for her support or that of the two minor girls. The only effect of the mother's testimony was not to show a state of dependency at the time of the accident, which is the condition required by the statute (§ 16, as amd. by Laws of 1916, chap. 622, and Laws of 1920, chap. 532), but that her children were growing and food and clothing cost more and the wages of the deceased would have increased, none of which facts tended to show a state of dependency at the time. There was no testimony to show what it cost to support the family, nor what it cost to board and clothe and pay the incidental expenses of supporting the deceased. There was no testimony to show the lack of financial resources in the way of saving bank accounts or other property outside of the wages of the father and of the other children. It is impossible to determine from the testimony whether there was any dependency even partial upon the wages of this boy of sixteen who was receiving ten dollars a week. On the contrary, the fair inference was the family had sufficient financial resources through the father, the two sons and the working daughter, in the absence of evidence showing that the living expenses of the family exceeded the income derived from them. It is also the fair inference from the testimony that the moneys received from the deceased were not used for the mother and the two alleged dependents, but were used to feed and clothe and pay carfare and spending money to the deceased. Dependency or dependent as used in the statute means one who looks to another for support or help and the award must be to each person for the support of that person. In the absence of a showing that the mother looked to this boy for support for herself and the two infant children at the time of the accident, it cannot be said that any real dependency has been shown.

The award should be reversed and the case returned for further consideration along the lines suggested.

All concur, H. T. KELLOGG and KILEY, JJ., in result, the latter not concurring in the opinion where it indicates there is no dependency of the mother.

Award reversed and matter remitted to the State Industrial Board for further consideration, with costs to the appellants to abide event.